John A. Delaney General Counsel Jacksonville Electric Authority
QUESTIONS:
1. Does the current Public Records Law, Ch. 119, F.S., enacted in 1967, apply to records which were received by the City of Jacksonville prior to that date and subsequently transferred to the Jacksonville Electric Authority?
2. Assuming the existence of a valid trade secret for engineering plans and specifications, does s. 812.081, F.S., act as an exemption to the Public Records Law for the purpose of inspecting and copying records?
3. If s. 812.081, F.S., does not constitute an exemption from Ch.119, F.S., does compliance with the disclosure requirements of that chapter serve as a defense to any charges brought pursuant to s. 812.081, F.S.?
SUMMARY:
1. Plans received by the City of Jacksonville prior to 1967 and subsequently transferred to the Jacksonville Electric Authority, are subject to the provisions of Ch. 119, F.S.
2. Section 812.081, F.S., does not constitute an exemption to Ch.119, F.S.
3. The JEA would appear to be under a duty to release public records even though such records may constitute trade secrets absent a statute making the information confidential or exempt from disclosure under Ch. 119, F.S. While the courts of this state have generally held a records custodian who adheres to the disclosure requirements of Ch. 119, F.S., to be personally immune from liability, the determination, however, as to whether Ch. 119, F.S., constitutes a valid defense to charges brought pursuant to s. 812.081, F.S., must be made by a court of competent jurisdiction.
You state that in 1962 the predecessor to the JEA, the Electric Department of the City of Jacksonville, built a generating station equipped with boilers and other devices used to generate electricity. At the conclusion of the construction project, the engineering company gave the department engineering plans which, although not copyrighted, stated:
 This drawing is the property of [the engineering company] boiler division and is loaned upon conditions that it is not to be reproduced or copies in whole or in part, or used for furnishing information to others, or for any other purpose detrimental to the interest of [the engineering company] and will be returned upon request.
The JEA was created as body politic and corporate in 1967 by special act of the Legislature.[1] Pursuant to the act, the JEA has assumed responsibility over the city's electrical system.[2] According to your letter, the JEA has determined that renovations to, and upgrading of, the generating station is required. In order to accomplish this, you state that it will be necessary to use all relevant plans and specifications.
The JEA contacted the engineering company to determine if the company objected to the plans being released for use in renovating the station. The company has claimed that the drawings and plans are trade secrets and it questions whether the current Ch. 119, F.S., applies to records given to the JEA's predecessor. You state that it is the opinion of JEA that the plans are public records subject to the provisions of Ch. 119, F.S., and that s. 812.081, F.S., does not constitute an exemption from the requirements of that chapter.
AS TO QUESTION 1:
The plans in question, although obtained by the city's electric department in 1962, were not received by the JEA until after the effective date of the 1967 legislation codified in Ch. 119, F.S. Inasmuch as the JEA was not created until after the enactment of public records act in 1967, records received by the JEA in connection with the transaction of its official business would clearly be subject to the act's terms.[3]
In addition, Florida has a long history of access to public records. As early as 1909, Florida has statutorily guaranteed that "all State, county, and municipal records shall at all times be open . . . ."[4] The provisions of that statute first adopted in 1909 are now found in s. 119.01(1), F.S., which states that it is the policy of this state that "all state, county, and municipal records shall at all times be open for a personal inspection by any person."
Therefore, at the time the plans were given to the Electric Department of the City of Jacksonville, state law required that municipal records be open for personal inspection. The enactment of Ch. 67-125, Laws of Florida, codified in Ch. 119, F.S., expanded the existing law but did not change the statutory requirement that municipal records be open for inspection. I find nothing in Ch. 119, F.S., which indicates an intent to distinguish between those records received by an agency prior to 1967 and those obtained subsequent to that date. Rather, the legislation appears to clarify what constitutes a public record and what are the duties and responsibilities of agencies in maintaining and providing access to such records.[5]
Moreover, The Supreme Court of Florida in City of Orlando v. Desjardins,[6] held that an exemption to Ch. 119, F.S., applied to records created prior to its enactment, stating "[i]f a statute is found to be remedial in nature, it can and should be retroactively applied in order to serve its intended purposes." The Court concluded that the statute in question addressed the type of "[r]emedial rights [arising] for the purpose of protecting or enforcing substantive rights." Access to records of governmental agencies are substantive rights of the people and the enactment of the 1967 legislation would appear to have been for the purpose of enforcing or protecting such rights.
Therefore, I am of the opinion that plans received by the City of Jacksonville prior to 1967 and subsequently transferred to the Jacksonville Electric Authority, are subject to the provisions of Ch. 119, F.S.
AS TO QUESTION 2:
Section 119.07(1), F.S., requires the custodian of public records to permit the inspection and copying of such records by any person desiring to do so, at reasonable times, under reasonable conditions, and under the supervision of the custodian of the records. Records, however, "which are presently provided by law to be confidential or which are prohibited from being inspected by the public" are removed from this statutory mandate.[7]
Section 812.081(2), F.S., provides:
Any person who, with intent to deprive or withhold from the owner thereof the control of a trade secret, or with an intent to appropriate a trade secret to his own use or to the use of another, steals or embezzles an article representing a trade secret or without authority makes or causes to be made a copy of an article representing a trade secret is guilty of a felony of the third degree, punishable as provided in s. 775.082 or s.775.083.
"Trade secret" is defined for purposes of the statute.[8]
In addition, Ch. 688, F.S., is the "Uniform Trade Secrets Act,"[9]
which provides civil relief for misappropriation of a trade secret.[10]
You ask whether s. 812.081, F.S., acts as an exemption to the disclosure requirements of Ch. 119, F.S. For purposes of this inquiry, you ask that this office assume that the plans or drawing in question qualify as a trade secret.[11] No comment, therefore, is expressed as to whether the particular plans or drawings constitute a trade secret.
Neither s. 812.081, F.S., nor Ch. 688, F.S., states that its provisions constitute an exemption from the requirement of the Public Records Law.[12] The Legislature, however, has created specific exemptions from Ch. 119, F.S., for certain trade secrets.[13] If the provisions of s. 812.081, F.S., or Ch. 688, F.S., constituted an exemption from Ch. 119, F.S., it would have been pointless for the Legislature to enact such statutes specifically exempting certain trade secrets from the requirements of the Public Records Law since s. 812.081, F.S., and Ch. 688, F.S., would have afforded such protection. The Legislature is not to be presumed to enact useless or unnecessary legislation.[14]
Therefore, I am of the opinion that neither s. 812.081, F.S., nor Ch. 688, F.S., by itself, constitutes an exemption to the disclosure requirements of Ch. 119, F.S.
AS TO QUESTION 3:
The determination as to whether Ch. 119, F.S., would be a valid defense to charges brought pursuant to s. 812.081, F.S., must be made by a court of competent jurisdiction, rather than by this office. The following general comments, however, are offered in an effort to be of some assistance.
The courts of this state have generally held a records custodian who adheres to the disclosure requirements of Ch. 119, F.S., to be personally immune from liability. For example, the Second District Court of Appeal in Friedberg v. Town of Longboat Key,[15]
considered a custodian's potential liability for supplying misinformation from a public record and concluded that there was no liability for either the records custodian or the agency in complying with the requirements of the Public Records Law. The court found "nothing in chapter 119 . . . evincing an intent to give private citizens a right of recovery for negligently maintaining and providing information from public records."[16]
In a similar case decided by the same court some months later, the court stated that the duty of a custodian under Ch. 119, F.S., in supplying information to the public and not a special duty owed to an individual citizen which would lead to a finding of liability.[17]
It is a function of government inherent in the act of governing, and therefore, there can be no liability imposed . . . because of the manner of performance of that function.[18]
On the other hand, the Fifth District Court of Appeal in Williams v. City of Minneola,[19] held that a records custodian may be liable in tort if the custodian intentionally and voluntarily disclosed public records when no request for disclosure had been made and it was not necessary to the agency's transaction of its official business to reveal the records to a person who had not requested to see them.[20]
It is not clear from your letter whether a request to inspect the plans has been received by the JEA. However, the release of such information may well be necessary for the JEA to renovate the station and, thus, under Williams, the disclosure of such information absent a request to inspect would be permissible.
As noted above, s. 119.07, F.S., requires an agency to release public records which are not made confidential or exempt from disclosure by statute. Moreover, as discussed in Question Two, I am of the opinion that s. 812.081, F.S., does not, in and of itself, exempt records from the disclosure requirements of Ch.119, F.S. Accordingly, the JEA would appear to be under a duty to release public records even though such records may constitute trade secrets, absent a statute making the information confidential or exempt from disclosure under Ch. 119, F.S.
RAB/tjw
[1] Chapter 67-1569, Laws of Florida.
[2] Section 12, Ch. 67-1569, Laws of Florida.
[3] See, Ch. 67-125, Laws of Florida, which became law without the Governor's approval and was filed in the Office of the Secretary of State on May 31, 1967; and Ch. 67-1569, Laws of Florida, which created the JEA and which became law without the Governor's approval and was filed int he Office of the Secretary of State on August 4, 1967. Section 12 of Ch. 67-1569, Laws of Florida, provides that the act shall become effective October 1, 1968.
[4] Section 1, ch. 5942, 1909 Laws of Florida. A citizenship limitation for access was deleted in 1975 and access to public records by any person guaranteed. Section 2, Ch. 75-225, Laws of Florida. Cf., Amos v. Gunn, 94 So. 615, 634 (Fla. 1922), in which the court, considering what constituted a public record prior to the enactment of a statutory definition, stated that "[a] public record is a written memorial, made by a public officer and that officer must be authorized by law to make it. . . . A public record is one required by law to be kept, ornecessary to be kept in the discharge of a duty imposed bylaw, or directed by law to serve as a memorial and evidence of something written, said, or done." (e.s.)
[5] The title to Ch. 67-125, Laws of Florida, provides that it is an act "relating to public records; relating to all state, county and municipal records; providing definitions . . .;" thus tracking the language of s. 119.01 which provides that all state, county and municipal records are open for inspection.
[6] 493 So.2d 1027, 1028 (Fla. 1986).
[7] See, s. 119.07(3)(a), F.S.
[8] See, s. 812.081(1)(c), F.S., defining "Trade secret" to mean:
[T]he whole or any portion or phrase of any formula, pattern, device, combination of devices, or compilation of information which is for use, or is used, in the operation of a business and which provides the business an advantage , or an opportunity to obtain an advantage, over those who do not know or use it. "Trade secret" includes andy scientific, technical, or commercial information, including any design, process, procedure, list of suppliers, list of customers, business code, or improvement thereof. Irrespective of novelty, invention, patentability, the state of the prior art, and the level of skill in the business, art, or field to which the subject matter pertains, a trade secret is considered to be : 1. Secret; 2. Of value; 3. For use or in use by the business; and 4. Of advantage to the business, or providing an opportunity to obtain an advantage, over those who do not know or use it when the owner thereof takes measures to prevent it from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.
[9] See, s. 688.001, F.S.
[10] See, s. 688.002(2), F.S., defining "Misappropriation"; and s. 688.002(4), F.S., defining "Trade secret" to mean information, including a formula, pattern, complication, program, device, method, technique, or process that:
(a) Derives independent economic value, actual or potential, form not being generally known to and being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
[11] See, AGO 80-31 stating that the fact that a private entity has stamped information submitted to a governmental agency a "trade secret" does not in itself make such information a "trade secret" for purposes of this statute.
[12] Cf., s. 119.14(4)(e), F.S., of the Open Government Sunset Review Act, which requires that an exemption that is created or revived and reenacted shall contain language clearly stating that it is an exemption from Ch. 119 or s.286.011, f.S. Section 119.14 was first enacted in 1984 by s. 8, Ch. 84-298, Laws of Florida; subsection (4)(e) was added when the statute was rewritten in 1985 by s. 1, Ch. 85-301, Laws of Florida. Chapter 688, F.S., was enacted in 1988 by Ch. 88-254, Laws of Florida.
[13] See, e.g., s. 119.07(3)*q), F.S. (computer processing software obtained by an agency under a licensing agreement which prohibits its disclosure and which software is a trade secret); s. 240.334(2), F.S. (actual or potential trade secrets obtained during the course of advance technology research in community colleges); s. 502.222, F.S. (records of Department of Agriculture and consumer Services revealing trade secret, as defined in s. 812.081, F.S., of dairy industry business confidential); s. 570.544(8), F.S. (information pertaining to consumer fraud or consumer protection received by an agency revealing trade secrets exempt); s. 627.4106(7)(c), F.S. (trade secrets involving small employer health insurance carriers). Seealso, ss. 24.105, 119.16, 230.66, 240.241, 240.539, 252.88, 288.121, 331.326, 378.101, 403.73, 442.111, 526.311, 570.48,601.15, and 601.76, F.S.
[14] See, e.g., City of North Miami v. Miami Herald Publishing company, 468 So.2d 218 (Fla. 1985) (in construing legislation, court should not assume Legislature acted pointlessly); Sharer v. Hotel Corporation of America, 144 So.2d 813
(Fla. 1962) (it should never be assumed that the Legislature intended to enact purposeless, and therefore, useless legislation); State v. Dunmann, 427 So.2d 166 (Fla. 1983) (there is a general presumption that the Legislature passes statutes with knowledge of prior existing law).
[15] 504 So.2d 52 (2 D.C.a. Fla., 1987).
[16] Id. at 53.
[17] City of Tarpon Springs v. Garrigan, 510 So.2d 1198,1199-1200 (2 D.C.A. Fla., 1987).
[18] Id.
[19] 575 So.2d 683 (5 D.C.A. Fla., 1991).
[20] Id.at 687.